UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

KEVIN HOUSE,

      Plaintiff,

v.                                                                          Case No.  8:15-cv-560-T-24 TGW

AETNA LIFE INSURANCE
COMPANY and BANK OF
AMERICA CORP.,

      Defendants.
_____/

**ORDER**

This cause comes before the Court on Defendant Aetna Life Insurance Company's

("Aetna") Motion to Dismiss Count II.  (Doc. No. 6).  Plaintiff opposes the motion.  (Doc. No.

10).  As explained below, the motion is granted, but the Court also grants Plaintiff leave to

amend.

**I.  Standard of Review**

In deciding a motion to dismiss, the district court is required to view the complaint in the

light most favorable to the plaintiff.  See Murphy v. Federal Deposit Ins. Corp., 208 F.3d 959,

962 (11th Cir. 2000)(citing Kirby v. Siegelman, 195 F.3d 1285, 1289 (11th Cir. 1999)).  The

Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon

which he bases his claim.  Instead, Rule 8(a)(2) requires a short and plain statement of the claim

showing that the pleader is entitled to relief in order to give the defendant fair notice of what the

claim is and the grounds upon which it rests.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct.

1955, 1964 (2007)(citation omitted).  As such, a plaintiff is required to allege "more than labels

and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Id.

at 1965 (citation omitted).  While the Court must assume that all of the allegations in the

complaint are true, dismissal is appropriate if the allegations do not "raise [the plaintiff's] right

to relief above the speculative level."  Id. (citation omitted).  The standard on a 12(b)(6) motion

is not whether the plaintiff will ultimately prevail in his or her theories, but whether the

allegations are sufficient to allow the plaintiff to conduct discovery in an attempt to prove the

allegations.  See Jackam v. Hospital Corp. of Am. Mideast, Ltd., 800 F.2d 1577, 1579 (11th Cir.

1986).

## II.  Background

Plaintiff Kevin House alleges the following in his complaint (Doc. No. 1): Plaintiff was

employed by Defendant Bank of America ("BOA") at all relevant times.  Plaintiff  was a

participant in an employee welfare plan ("the Plan") that provided long-term disability ("LTD")

benefits, which was sponsored by BOA.  Not only is BOA the Plan Sponsor, but BOA is also the

named Plan Administrator.  However, BOA played no part in the administration of the Plan or in

the determination of Plaintiff's LTD claim.

Defendant Aetna is the insurer of the Plan and is also the fiduciary charged with making

benefit determinations under the Plan, including the determination of Plaintiff's LTD claim.

Additionally, Aetna pays the approved claims from its own assets.

House made a claim for LTD benefits under the Plan, which Aetna denied on August 13,

2012.  Plaintiff appealed Aetna's decision, and Aetna failed to respond to Plaintiff's appeal.  As

a result, Plaintiff asserts a claim for ERISA benefits against Aetna in Count I.

Additionally, Plaintiff alleges that Aetna is an administrator making decisions on his

LTD claim, and as such, Aetna is the *de facto* plan administrator.  Due to Aetna's *de facto* plan

administrator status, Plaintiff contends that Aetna is under a legal duty to provide his claim file

and Plan documents upon his request.  Plaintiff contends that Aetna received his request for his

claim file and Plan documents on November 26, 2012 and then again on February 8, 2013.

However, Aetna failed to produce the requested documents, and as a result, Plaintiff asserts a

claim against Aetna, pursuant to 29 U.S.C. § 1132(c)(1), for failure to produce these documents

in Count II.[1]  This is the claim at issue in Aetna's motion to dismiss.

### III.  Motion to Dismiss

In response to the complaint, Aetna moves to dismiss Count II.  Specifically, Aetna

argues: (1) it is not the Plan Administrator, and as such, Plaintiff cannot assert this claim against

it; and (2) a claim under § 1132(c) does not apply to Plaintiff's request for his claim file.

Accordingly, the Court will analyze each argument.

### A.  Plan Administrator

In Count II, Plaintiff asserts a claim against Aetna for failing to produce the documents

that he requested, and as a result, he claims that Aetna is liable for penalties under § 1132(c)(1).

Section 1132(c)(1) provides, in pertinent part, the following: "Any administrator . . . who fails or

refuses to comply with a request for any information which such administrator is required by this

subchapter to furnish to a participant . . . within 30 days after such request may in the court's

discretion be personally liable to such participant . . . in an amount up to $[110][2] a day from the

date of such failure or refusal . . . ."

---

[1]In Count III, Plaintiff asserts a claim against BOA for failing to produce his claim file and Plan documents after receiving his requests on November 26, 2012 and February 4, 2013.

[2]The amount of the penalty was increased to $110 per day, pursuant to 29 C.F.R. § 2575.502c-1.

Aetna argues that Count II must be dismissed, because such a claim under § 1132(c) can

only be brought against a plan administrator, and Aetna is not the plan administrator.  Aetna

points out that Plaintiff acknowledged in his complaint that BOA is the named Plan

Administrator.

In response, Plaintiff does not dispute that only a plan administrator can be liable for the

penalty set forth in § 1132(c).  See Byars v. The Coca-Cola Co., 517 F.3d 1256, 1270-71 (11th

Cir. 2008).  Instead, Plaintiff argues that he has alleged in the complaint that BOA has played no

part in the administration of the Plan, and instead, Aetna has acted as the *de facto* plan

administrator.

The law on the issue of whether an insurance company claims administrator can also be

found to be acting as a *de facto* plan administrator is unsettled within the Eleventh Circuit.

Therefore, a review of the relevant case law on this issue is set forth below.

In Baker v. Big Star Division of the Grand Union Company, 893 F.2d 288, 289 (11th Cir.

1990), the plaintiff sued the insurance company claims administrator for ERISA benefits.

However, the Baker court concluded that the insurance company was not the plan administrator,

and thus, it was not a proper defendant, stating:

> [An entity that] merely performs claims processing, investigatory,
> and record keeping duties is not a fiduciary. [The insurance company]
> processed claims and disbursed benefit payments pursuant to Plan
> terms under an administrative services agreement with [the
> employer,] Grand Union. [The insurance company] did not contract
> to provide Grand Union with benefits insurance for Grand Union
> employees.
>
> Grand Union did no more than "rent" the claims processing
> department of [the insurance company] to review claims and
> determine the amount payable "in accordance with the terms and
> conditions of the Plan."  Grand Union reserved the right to review

> any and all claim denials.   An insurance company does not become
> an ERISA "fiduciary" simply by performing administrative functions
> and claims processing within a framework of rules established by an
> employer, especially if, as in this case, the claims processor has not
> been granted the authority to review benefits denials and make the
> ultimate decisions regarding eligibility.
>
> We affirm the decision of the district court that [the insurance
> company] is not an ERISA fiduciary under the terms of the Plan and
> therefore is not subject to suit for its part in denying [the plaintiff] .
> . . benefits under the Pan.

Id. at 290 (internal citations omitted).

The first time the Eleventh Circuit addressed the issue of a *de facto* plan administrator

was in the case of Rosen v. TRW, Inc., 979 F.2d 191 (11th Cir. 1992).  In Rosen, the plan at

issue designated an Administrative Committee as the plan administrator.  See id at 192.

However, the plaintiff alleged that his employer was the *de facto* plan administrator, because the

Administrative Committee was an unincorporated, unfunded, inactive entity that was the alter

ego of the employer.  See id. at 193.  In accepting the plaintiff's argument that he had

sufficiently alleged in the proposed amended complaint that his employer was the *de facto* plan

administrator, the Rosen court stated:

> We agree with the reasoning of the First Circuit [in Law v. Ernst &
> Young] and we hold that if [the employer] is administrating the plan,
> then it can be held liable for ERISA violations, regardless of the
> provisions of the plan document.  We note that dismissal of [the
> plaintiff's] claim at this point in the litigation would deprive him of
> any remedy in the event that the [employer] ultimately was found
> liable for assuming control of the plan's administration. Congress
> intended to provide a remedy for ERISA violations. The district court
> effectively denied such a remedy when it dismissed the case and
> denied leave to amend the complaint.

Id. at 193-94.

The Rosen court relied on the First Circuit's decision in Law v. Ernst & Young, 956 F.2d

5

364 (1st Cir. 1992).  In <u>Law</u>, the plaintiff sued his former employer for penalties under

§ 1132(c), despite the fact that the plan named a committee of the employer as the plan

administrator.  <u>See</u> <u>id.</u> 372.  The <u>Law</u> court concluded that there was sufficient evidence that the

plaintiff's former employer was acting as the *de facto* plan administrator, because the employer

"had assumed and controlled the plan administrator's function of furnishing required information

in response to a plan beneficiary's request."  <u>Id.</u> at 372.  In reaching this conclusion, the <u>Law</u>

court stated:

> [W]here an entity of which the administrator is part in effect holds itself out as the plan administrator by officially disseminating such information, we think it is subject to § 1132(c) liability should it fail to discharge that role in a proper way.  Hence, where as here plan documents place the responsibility for providing information upon an internal committee of a firm, but the firm in practice carries out that function, we see no reason not to hold the firm liable under § 1132(c) when it fails to provide the information in the timely manner required by law.
>
> This conclusion is consistent with the intent of Congress that employees have a remedy when they are denied timely information about their ERISA benefits. To hold that an entity not named as administrator in the plan documents may not be held liable under § 1132(c), even though it actually controls the dissemination of plan information, would cut off the remedy Congress intended to create. If a company ignored in practice any distinction between the administrator and itself, and assumed responsibility for responding to plan inquiries (as [the employer] appears to have done here), both it and the purported plan administrator would be immune from liability. A § 1132(c) suit against the company would fail, because the company itself was not named administrator in the plan documents. Likewise, a suit against the plan administrator would fail, because employees would have had no reason to request information from the plan administrator if company personnel assumed responsibility for such requests. There being no request to the designated plan administrator, that entity could not be held liable for failure to respond properly.
>
> There was ample evidence here from which the district court could conclude that [the employer] itself controlled the provision of

> information concerning [the] ERISA plan.
>
>       *     *     *
>
> The district court was entitled to conclude from this evidence that [the employer] itself was voluntarily assuming, and that it controlled, the information-providing function (at least) of the [named plan administrator]. We hold, therefore, that the court properly treated [the employer] as the *de facto* plan administrator for purposes of [the plaintiff's] § 1132(c) claim.

Id. at 373-74.

   After the Rosen decision, the Eleventh Circuit consistently stated that the plan administrator "is the party that controls the administration of the plan." Garren v. John Hancock Mutual Life Ins. Co., 114 F.3d 186, 187 (11th Cir. 1997). In Garren, the plaintiff attempted to sue the insurance company that administered the claims, rather than the named plan administrator. See id. The Garren court affirmed the lower court's dismissal of the insurance company, because the evidence showed that the insurance company was not the plan administrator, as it did "not exercise any discretion, responsibility or control over the administration of the Plan." Id. Instead, the named plan administrator had the "'exclusive responsibility and complete discretionary authority to control the operation and administration of th[e] Plan.'" Id.

   Likewise, in Hamilton v. Allen-Bradley Company, Inc., 244 F.3d 819, 823 (11th Cir. 2001), the plaintiff sued her employer for ERISA benefits. In determining that there was evidence that the employer had sufficient control over the plan to be considered a plan administrator," the Hamilton court stated:

> Proof of who is the plan administrator may come from the plan document, but can also come from the factual circumstances surrounding the administration of the plan, even if these factual circumstances contradict the designation in the plan document. The

key question on this issue is whether [the employer] had sufficient decisional control over the claim process that would qualify it as a plan administrator under Rosen. This requires an analysis of the facts surrounding the administration of the disability plan. The first fact is that the plan booklet states that any claim must be made to UNUM. This would seem to cut in [the employer's] favor.

However, [the plaintiff] offers testimony by Lee to the effect that [the employer] requires its employees to go through its human resources department in order to obtain an application for disability benefits. This fact places [the employer] in sufficient control over the process to qualify as the plan administrator notwithstanding the language of the plan booklet. Moreover, . . . [the plan booklet identifies both UNUM and the employer as the entities administering the plan]. [The plaintiff] points out that [the employer] did carry out its administrative designation by handing out the claim forms itself without getting prior permission from UNUM, and by fielding questions about the plan from employees. [The plaintiff] also includes an excerpt of Lee's deposition that identifies [the employer's headquarters] as the headquarters of the plan administration. Under the factual inquiry outlined in Rosen, there are sufficient indicators that point to [the employer] as a plan administrator.

Id. at 824 (internal citations omitted).

Thereafter, in Oliver v. Coca Cola Company, 497 F.3d 1181, 1186 (11th Cir. 2007), *vacated in part on petition for reh'g*, 506 F.3d 1316 (11th Cir. 2007), the Eleventh Circuit was faced with the issue of whether the claims administrator could be considered a *de facto* plan administrator with respect to the plaintiff's claim for ERISA benefits. The plan document named the plaintiff's employer as the plan administrator. See id. at 1193. In determining whether the claims administrator could be considered a *de facto* plan administrator, the Oliver court reviewed its prior cases on the issue—Hamilton, Rosen, and Garren—stating:

Each of the foregoing cases, however, is distinguishable from the instant case in a significant respect: Hamilton, Garren, and Rosen applied the *de facto* administrator doctrine to employers, not to third-party administrative services providers. At issue in those cases were plans with frameworks similar to that in this case: an employer established an ERISA plan and then outsourced responsibility for

8

administering claims to a separate entity. In <u>Hamilton</u> and <u>Rosen</u>, plan participants brought suit against *employers* that had sought to avoid liability as plan administrators, not, as here, against the third-party claims administrator.  In <u>Garren</u>, the plaintiff brought suit against the third-party claims administrator, and the court held that the true plan administrator was the employer.

Indeed, where a plaintiff has sought to hold a third-party administrative services provider liable, rather than the employer, we have rejected the *de facto* plan administrator doctrine. . . . [In <u>Baker</u>, the court held] that "[the employer] did no more than 'rent' the claims processing department of [the insurance company] to review claims and determine the amount payable 'in accordance with the terms and conditions of the Plan.'"  We held that [the insurance company] "[did] not become an ERISA 'fiduciary' simply by performing administrative functions and claims processing within a framework of rules established by an employer," particularly in light of the fact that the employer made the final determination as to eligibility.

Were we to find [in the instant case that the claims administrator was] a *de facto* plan administrator on these facts, we would undercut the ability of employers to contract out the administrative tasks associated with operating an ERISA plan, a practice we upheld in <u>Baker</u>. Indeed, it is hard to imagine how an administrative services provider could fulfill its functions without engaging in the types of activity that, in <u>Hamilton</u>, triggered the application of the *de facto* administrator doctrine. . . . Because [the claims administrator in this case] is merely an administrative services provider, and because, under the Plan, [the employer], through the Committee—not [the claims administrator]—makes the final decision on benefits claims, we are bound by <u>Baker</u> to hold that [the employer] is the plan administrator.

<u>Id.</u> at 1194-95 (internal citations omitted).

In the instant case, the parties dispute the effect of <u>Oliver</u> on the issue before the Court.

Aetna argues that <u>Oliver</u> holds that claims administrators, as a matter of law, cannot be found to

be considered a *de facto* plan administrator when the plan names a different entity as the plan

administrator.  Plaintiff, on the other hand, reads <u>Oliver</u> as not foreclosing the *possibility* that

Aetna could be considered a *de facto* plan administrator, and that a fact-intensive inquiry is

required in order to resolve the issue (which is not appropriate on a motion to dismiss).

The case law on this issue from district courts within the Eleventh Circuit is also

divergent.  There are cases that have rejected the plaintiff's argument that the insurance company

claims administrator was a *de facto* plan administrator.  See Maxwell v. Blue Cross Blue Shield

Healthcare Plan of Georgia, 2009 WL 734115, at *5 (N.D. Ga. Mar. 18, 2009); Castro v.

Hartford Life & Accident Ins. Co., 2011 WL 4889174, at *7-8 M.D. Fla. Oct. 14, 2011)(stating

that the Eleventh Circuit has only extended the *de facto* plan administrator doctrine to

employers); Rohan v. United Healthcare Ins. Co., 881 F. Supp.2d 1356, 1359-61 (N.D. Fla.

2012)(noting that "[t]he Eleventh Circuit has expressly rejected attempts to impose *de facto* plan

administrator status on a third-party administrative services provider"); Poole v. Life Ins. Co. of

North America, 984 F. Supp.2d 1179, 1192 (M.D. Ala. 2013)(stating that "claims administrators

are distinct from plan administrators, and only plan administrators are subject to the ERISA

penalties set out in 29 U.S.C. § 1132(c)").

However, there are also persuasive cases supporting Plaintiff's argument that it is

*possible* for a claims administrator to be considered a *de facto* plan administrator if the facts

show that the claims administrator was actually acting as a plan administrator.  See Byars v. The

Coca-Cola Co., 2004 WL 1595399, at *9 (N.D. Ga. Mar. 18, 2004)(denying the insurance

company's motion to dismiss in which it argued that it was not a *de facto* plan administrator,

because the plaintiffs had alleged that the insurance company had "assumed responsibility for

providing information about the plan and plan documents to participants"); Cheal v. Life Ins. Co.

of N. America, 330 F. Supp.2d 1347, 1357 (N.D. Ga. 2004)(denying the insurance company's

motion to dismiss and stating that whether the insurance company claims administrator was a *de facto* plan administrator is a factual inquiry and finding that the plaintiff sufficiently alleged that the insurance company controlled the administration of the plan); Till v. Lincoln National Life Ins. Co., 2014 WL 6895285, at *6 (M.D. Ala. Dec. 5, 2014)(denying the insurance company's motion to dismiss based on the argument that it was not a *de facto* plan administrator and concluding that the issue "of whether a defendant is acting as plan administrator is fact intensive and better decided at a later stage of this litigation"); Newton v. Hartford Life & Accident Ins. Co., 2015 WL 1498868, at *2 (N.D. Ala. Mar. 30, 2015)(acknowledging that the issue of whether an insurance company is a *de facto* plan administrator is a factual inquiry).  This Court is persuaded by these cases and concludes that dismissal is not warranted if the complaint sufficiently alleges that Aetna was acting as a *de facto* plan administrator.

In the complaint, Plaintiff alleges that: (1) while BOA is the named Plan Administrator, BOA actually played no part in the administration of the Plan or in the determination of Plaintiff's LTD claim; (2) Aetna is an administrator making decisions on his LTD claim, and as such, Aetna is the *de facto* plan administrator; and (3) due to Aetna's *de facto* plan administrator status, Plaintiff contends that Aetna is under a legal duty to provide his claim file and Plan documents upon his request.  Thus, Plaintiff alleges the conclusion that Aetna is a *de facto* plan administrator, and due to that status, Plaintiff alleges that Aetna had a duty to provide the ERISA documents he requested.  This is not sufficient to plead that Aetna was a *de facto* plan administrator.  To be the *de facto* plan administrator, the entity must control the administration of the plan and control the dissemination of information.  Plaintiff alleges the conclusion that Aetna was a *de facto* plan administrator, and as a result of that characterization, Plaintiff

11

contends that Aetna has a duty to provide the ERISA documents.  Instead, the reverse must be

alleged—because Aetna undertook the responsibility to disseminate ERISA information and to

control the administration of the Plan (due to BOA being an inactive plan administrator), Aetna

is alleged to be a *de facto* plan administrator.  Plaintiff seems to make this argument in his

response brief, and the Court will allow him leave to amend the complaint in order to sufficiently

allege that Aetna was a *de facto* plan administrator.

Accordingly, the Court grants Aetna's motion to dismiss Count II, because the claim is

not sufficiently alleged.  However, the Court rejects Aetna's argument that Plaintiff cannot, as a

matter of law, state a claim against it under § 1132(c).

**B.  Section 1132(c) Documents**

Because the Court is granting Plaintiff leave to amend, the Court will address Aetna's

other argument—that Plaintiff cannot assert a claim under § 1132(c) relating to his request for

his claim file.  As previously stated, §1132(c)(1) provides that if the plan administrator fails "to

comply with a request for any information which such administrator is required by this

subchapter to furnish to a participant" within thirty days, the court may impose a penalty of up to

$110 per day.  Pursuant to 29 U.S.C. § 1024(b)(4), a plan administrator is required to furnish,

upon written request, the following: "a copy of the latest updated summary[] plan description,

and the latest annual report, any terminal report, the bargaining agreement, trust agreement,

contract, or other instruments under which the plan is established or operated."  Thus, a strict

reading of § 1132(c)(1) and § 1024(b)(4) supports Aetna's argument that it cannot be held liable

for a per diem penalty for failing to provide Plaintiff with his claim file, as that is not a document

that § 1024 requires a plan administrator to furnish.

Plaintiff responds that the Secretary of Labor's regulations increase the types of documents that a plan administrator must furnish to a participant.  Specifically, 29 C.F.R. § 2560.503-1(h)(2) states:

> [T]he claims procedures of a plan will not be deemed to provide a claimant with a reasonable opportunity for a full and fair review of a claim and adverse benefit determination unless the claims procedures . . . [p]rovide that a claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits.

Id.  Furthermore, the regulations define relevant information as information that was relied on, submitted, considered, or generated in the course of making the benefit determination.  29 C.F.R. § 2560.503-1(m)(8).  Thus, Plaintiff's claim file would fall within this regulation.

Based on these regulations, there is authority for Plaintiff's contention that he was entitled to be furnished with his claim file.  However, the case law indicates that the § 1132(c) per diem penalty does not apply to the provision of the claim file; it only applies to the provision of documents required to be provided by the subchapter, not the regulations.  See Brucks v. Coca-Cola Co., 391 F. Supp.2d 1193, 1211-12 (N.D. Ga. 2005); Montgomery v. Metropolitan Life Ins. Co., 403 F. Supp.2d 1261, 1265-66 (N.D. Ga. 2005); Ferree v. Life Ins. Co. of N. America, 2006 WL 2025012, at *5-6 (N.D. Ga. July 17, 2006); Krasny v. Jefferson Pilot Financial Ins. Co., 2007 WL 8043009, at *2 (N.D. Ga. Mar. 20, 2007); Giertz-Richardson v. Hartford Life & Accident Ins. Co., 2007 WL 1099094, at *2 (M.D. Fla. April 10, 2007); Disanto v. Wells Fargo & Co., 2007 WL 2460732, at *15-16 (M.D. Fla. Aug. 24, 2007); Castro, 2011 WL 4889174, at *5-6; Poole, 984 F. Supp.2d at 1191 n.17.

Plaintiff responds by citing one case in which the court applied the § 1132(c) penalty for

13

a violation of the regulations.  See Hamall-Desai v. Fortis Benefits Ins. Co., 370 F. Supp.2d

1283, 1313-14 (N.D. Ga. 2004).  However, it does not appear that an argument was raised in that

case regarding the propriety of § 1132(c) penalties for a violation of the regulations.

Furthermore, while Plaintiff points out that the case was affirmed on appeal, the Court notes that

the case was affirmed without opinion.  See  See Hamall-Desai v. Fortis Benefits Ins. Co., 164

Fed. Appx. 963 (11th Cir. 2006).  Thus, this Court does not read this authority as persuasive case

law on the issue.

Instead, the Court notes that in Byars v. The Coca-Cola Co., 2006 WL 2523095, at *8

(N.D. Ga. Aug. 28, 2006), the district court held that the failure to produce documents required

to be furnished by the regulations did not result in penalties under § 1132(c).  On appeal, the

Eleventh Circuit affirmed this portion of the district court's opinion, stating that "the regulations

that [the plaintiff] relied on as authority for her request do not apply to § 1132(c)(1), but rather

apply to § 1133, which establishes the types of claims procedures that administrators are

required to maintain."  Byars, 517 F.3d at 1270.  Thus, this Court finds that the Eleventh

Circuit's statement in Byars is more persuasive than its affirmance without opinion in Hamall-

Desai, in which it is not even clear whether an argument was raised regarding the propriety of

§ 1132(c) penalties for a violation of the regulations.

Accordingly, the Court agrees with Aetna that Plaintiff's § 1132(c) claim cannot be based

on Aetna's failure to provide Plaintiff with his claim file.[3]  When Plaintiff amends his complaint,

he is directed to remove such allegations from his amended complaint.

---

[3]While not argued by Plaintiff, he cannot attempt to argue that his claim file falls within
the "other instruments under which the plan is established or operated" catchall provision of
§ 1024(b)(4).  See Fox v. Blue Cross & Blue Shield of Florida Inc., 517 Fed. Appx. 754, 757
(11th Cir. 2013).

**IV.  Conclusion**

Accordingly, it is ORDERED AND ADJUDGED that Aetna's Motion to Dismiss Count II (Doc. No. 6) is **GRANTED**.  However, Plaintiff is granted leave to amend the complaint solely to fix Count II by: (1) sufficiently alleging facts to support his contention that Aetna is a *de facto* plan administrator, and (2) limiting the claim to Plaintiff's request for the specific documents set forth in § 1024(b)(4).  Plaintiff is directed to file the amended complaint by May 28, 2015.

**DONE AND ORDERED** at Tampa, Florida, this 13th day of May, 2015.

SUSAN C. BUCKLEW
United States District Judge

Copies to:
Counsel of Record

15